UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80371-CIV-HURLEY/HOPKINS

ED BAIN, et al.,

    Plaintiffs,

v.

THE JOCKEY CLUB TECHNOLOGY
SERVICES, INC., et al.,

    Defendants.
_____/

### ORDER ON DEFENDANTS' MOTIONS TO DISMISS

**THIS CAUSE** is before the court upon defendant HDW, Inc.'s motion to dismiss [DE # 32], defendant Bloodstock Research Information Services, Inc.'s motion to dismiss [DE # 33], and defendants The Jockey Club Technology Services, Inc. and Equibase Company LLC's motion to dismiss [DE # 37]. For the reasons given below, the court will grant HDW, Inc.'s motion; grant in part and deny in part Bloodstock Research Information Services, Inc.'s motion; and grant in part and deny in part The Jockey Club Technology Services, Inc. and Equibase Company LLC's motion.

#### BACKGROUND

The following facts are taken from plaintiff's amended complaint [DE # 25]. As required on a motion to dismiss, the court has construed the complaint broadly, accepted all facts pled therein as true, and viewed all inferences in a light most favorable to the plaintiff. *See Jackson v. Birmingham Bd. of Educ.*, 309 F.3d 1333, 1334 (11th Cir. 2002).

Plaintiff Ed Bain is a horse racing handicapper. Bain sells publications which contain statistics and advice for the benefit of those interested in wagering on horse races. Defendant

Equibase LLC maintains a database of horse racing data; defendants HDW, Inc. and Bloodstock Research Information Services, Inc. ("BRIS") are licensees of Equibase. In June 2000, Bain entered into a business arrangement with HDW pursuant to which HDW would offer Internet handicapping services incorporating Bain's proprietary methodology. The arrangement proved unprofitable for Bain and Bain terminated the relationship with HDW in March 2006. Bain and plaintiff Edbain.com LLC instead began operating an independent website. Bain purchased horse racing data for use on his independent website from defendant BRIS, which had made the data available for purchase by the general public. After discovering that Bain had purchased the data, BRIS and Equibase refused to sell data any longer to Bain, and Equibase demanded that Bain shut down his websites. After Bain refused, BRIS and defendant The Jockey Club Technology Services, Inc. ("Jockey Club") launched attacks on Bain's business and personal computers. According to the complaint, BRIS and Jockey Club planted software on Bain's computer that destroyed Bain's websites, re-configured Bain's computers, and gathered sensitive personal information, such as passwords to Bain's financial accounts.

Bain then filed the instant lawsuit in this court on April 27, 2007. Bain alleges that defendants BRIS and Jockey Club violated the federal Computer Fraud and Abuse Act, and that those two defendants and Equibase are liable under state-law causes of action for trespass to chattels, interference with business relations, and conversion. HDW, Inc. filed a motion to dismiss on August 9, 2007; BRIS filed a motion to dismiss on August 13, 2007; and Jockey Club and Equibase filed a motion to dismiss on August 16, 2007.

## JURISDICTION

This court has jurisdiction over plaintiff's Computer Fraud and Abuse Act claim pursuant

to 28 U.S.C. § 1331 because that claim is brought pursuant to 18 U.S.C. § 1030. The court has supplemental jurisdiction over plaintiff's other claims pursuant to 28 U.S.C. § 1367.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the plaintiffs' claims occurred in the Southern District of Florida.

## DISCUSSION

### A.   Standard on Motion to Dismiss

Granting a motion to dismiss is appropriate when a complaint contains simply "a formulaic recitation of the elements of a cause of action." *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). To survive a motion to dismiss, a complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence" in support of the claim and that plausibly suggest relief is appropriate. *Id.* On a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986). The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim upon which relief can be granted. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). Regardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law. *See Marshall County Bd. Of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### B.   Defendants' Motion to Dismiss

1.   *HDW, Inc.*[1]

---

[1] The court raises *sua sponte* one point regarding HDW's motion to dismiss. HDW did not move to dismiss for failure to state a claim. However, a review of the amended complaint reveals that plaintiffs have not actually asserted any legal claims against HDW, although HDW is

HDW, Inc. argues that it is not subject to personal jurisdiction in Florida (and, as a consequence, that venue is improper in this district). HDW also argues that the court should stay the action pending the outcome of a currently pending and earlier-filed related action in Kentucky involving the same parties.

A determination of personal jurisdiction entails a two-step inquiry. First, the court must determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute. If it is, the court must then examine whether the exercise of jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment. *See Sloss Industries Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007). The ultimate burden is on the plaintiff to establish personal jurisdiction; but where the parties' affidavits and documents conflict, a court deciding a motion to dismiss for lack of personal jurisdiction must make all reasonable inferences in favor of the plaintiff. *See Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

Florida's long-arm statute, Fla. Stat. § 48.193, provides in part:

---

part of the larger story. Plaintiffs' 18 U.S.C. § 1030 claim is apparently asserted only against Jockey Club and BRIS, as are plaintiffs' interference and conversion claims. (Plaintiffs' trespass to chattels claim appears to be asserted against Jockey Club, BRIS, and Equibase.)

Although plaintiffs have literally failed to state a claim against HDW, the court nonetheless declines to dismiss the complaint as to HDW on that ground because HDW did not raise it in its motion to dismiss, and dismissal on grounds not briefed by the parties is generally disfavored. *See Volvo North America Corp. v. Men's Int'l Professional Tennis Council*, 857 F.2d 55, 65 (2d Cir. 1988); *cf. Neitzke v. Williams*, 490 U.S. 319, 329-30 (1989) ("Under Rule 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon. These procedures alert him to the legal theory underlying the defendant's challenge, and enable him meaningfully to respond by opposing the motion to dismiss on legal grounds or by clarifying his factual allegations so as to conform with the requirements of a valid legal cause of action.").

>   (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection therey submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
>>   (a) Operating, conducting, engaging in, or carrying on a business venture in this state or having an office or agency in this state.
>
>   ...
>
>   (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Plaintiffs first argue that HDW is subject to general jurisdiction in Florida pursuant to subsection (2) because HDW has acknowledged that 5% of its sales derive from Florida residents. To be subject to general jurisidiction in Florida, a defendant must have "continuous and systematic business contacts" with Florida. *Gadea v. Star Cruises, Ltd.*, 949 So.2d 1143, 1145 (Fla. 3d Dist. Ct. App. 2007); *Carib-USA Ship Lines Bahamas Ltd. v. Dorsett*, 935 So.2d 1272, 1275 (Fla. 4th Dist. Ct. App. 2006). The reach of this general-jurisdiction prong of Florida's long-arm statute is equal or lesser in scope to what is permitted by the Due Process Clause of the U.S. Constitution, so that if the requirements for general jurisdiction are satisfied, there is no due process violation. *See Woods v. Nova Companies Belize Ltd.*, 739 So.2d 617, 620 (Fla. 4th Dist. Ct. App. 1999).

The court finds that HDW has not engaged in "continuous and systematic business" contacts with Florida. HDW does not own any property in Florida and has no office or physical presence in Florida. All of HDW's employees and agents are located in Kentucky, where HDW has its principal place of business. HDW's only general connection with Florida is the 5% of its sales that derive from customers providing Florida billing addresses. *Cf. Baker v. Carnival Corp.*, 2006 WL 3360418

at *4 (S.D. Fla. 2006) (finding no general jurisdiction over a foreign defendant that derived 1.5% of its sales from Florida customers). HDW provides the website to the public and world at large and makes no particular effort to attract customers or business from Florida. Accordingly, the court concludes that HDW is not subject to general jurisdiction in Florida.

Plaintiffs argue that HDW is subject to specific jurisdiction in Florida, but appear to conflate the statutory long-arm analysis with the constitutional "minimum contacts" analysis. In any event, the court finds that the long-arm statute does not confer specific jurisdiction over plaintiffs' claims against HDW because plaintiffs' cause of action does not arise out of HDW's alleged contacts with the forum. HDW is alleged to have entered into an agreement with the plaintiffs, who are Florida residents, but plaintiffs' claims arise not from that agreement but from what allegedly happened after Bain ended that business relationship. Accordingly, the court concludes that HDW is not subject to specific jurisdiction in Florida.

The court further finds that even were HDW subject to personal jurisdiction in Florida under Florida's long-arm statute, the exercise of personal jursidiction by a Florida court over HDW would be inconsistent with the Due Process Clause. The defendant must have "purposefully established 'minimum contacts' in the forum State" and have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 108-09 (1987). The requirement of purposeful availment has special application in the context of Internet commerce, because website operators may well have non-negligible, but not purposefully-established, contacts with a state. *See Instabook Corp. v. Instantpublisher.com*, 469 F. Supp. 2d 1120, 1127 (M.D. Fla. 2006) ("Asserting personal jurisdiction over [the defendant] on the basis of

its isolated sales and interactive website would ignore the constitutional requirement of deliberate, rather than merely foreseeable, contacts."). There is no indication here that HDW, through its online business, sought purposefully to do business specifically in Florida or to avail itself of the particular privilege of conducting business in Florida. Therefore, the court finds that personal jurisdiction over HDW, even were it authorized by the long-arm statute, could not be exercised without offending the Due Process Clause.

Accordingly, the court will dismiss the complaint as to HDW for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and will deny as moot HDW's motion to stay the action.

    2.    BRIS

BRIS argues that plaintiffs' complaint should be dismissed as to it pursuant to Fed. R. Civ. P. 12(b)(6). The court resolves the motion as to each of the plaintiffs' claims against BRIS below.

    a.    Computer Fraud and Abuse Act

The Computer Fraud and Abuse Act makes it unlawful to:

> (A) knowingly cause[] the transmission of a program information, code, or command, and as a result of such conduct, intentionally cause[] damage without authorization, to a protected computer; or
>
> (B) intentionally acess[] a protected computer without authorization, and as a result of such conduct, recklessly cause[] damage; or
>
> (C) intentionally access[] a protected computer without authorization, and as a result of such conduct, cause damage.

18 U.S.C. § 1030(a)(5). Plaintiffs' computers are "protected computers" because they are used in interstate or foreign communication. 18 U.S.C. § 1030(e)(2)(B). The statute explicitly authorizes a private cause of action against alleged violators. 18 U.S.C. § 1030(g).

BRIS argues both that there are no allegations against it, and that the allegations against it

are unfounded. However, the court finds that there are allegations against BRIS in the complaint, and notes that in this procedural posture it must accept the allegations as true. Among other claims, plaintiffs have alleged that BRIS intentionally accessed plaintiffs' business computers and intentionally transmitted a virus to cause damage. *See* Pls.' Am. Compl. ¶ 18, 34-35. Those allegations properly state a claim under 18 U.S.C. § 1030(a)(5)(A). As a result, the court must deny the motion to dismiss the Computer Fraud and Abuse Act claim against BRIS.

BRIS has moved in the alternative for a more definite statement. Plaintiffs have identified and described the alleged facts underlying their claims in great detail. *See* Pls.' Am. Compl. ¶ 17-26. As a result, the court will deny the motion for a more definite statement.

b. Trespass to Chattels

BRIS argues that planitiffs have not properly stated a trespass to chattels claim against it, and that the claim should therefore be dismissed. Florida defines the tort of trespass to personal property as "the intentional use of, or interference with, a chattel which is in the possession of another, without justification." *Coddington v. Staab*, 716 So.2d 850, 851 (Fla. 4th Dist. Ct. App. 1998). The definition of a "chattel" appears not to include intangible property. *See Burshan v. National Union Fire Ins. Co. of Pittsburgh, PA*, 805 So.2d 835, 846 (Fla. 4th Dist. Ct. App. 2001) (excluding a bank account from the definition of "chattel"); *Inventory Locator Service, LLC v. Partsbase, Inc.*, 2005 WL 2179185 at *11 (W.D. Tenn. 2005) (concluding that Florida law does not recognize an action for trespass to chattels in cases where the plaintiff has alleged unauthorized access to a database or website). The court further notes that plaintiffs did not respond to BRIS' motion to dismiss the trespass to chattels claim. Accordingly, the court will dismiss the trespass to chattels claim against BRIS.

    c.  Interference with Business Relationship

BRIS argues that plaintiffs have not properly stated a claim against it for interference with a business relationshp. Under Florida law, to recover for tortious interference with a business relationship, a plaintiff must show (1) the existence of a business relationship; (2) that the defendant knew of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) that the aggrieved party was damaged as a result of the interference. *See Marquez v. PanAmerican Bank*, 943 So.2d 284, 286 (Fla. 3d Dist. Ct. App. 2006); *Walters v. Blankenship*, 931 So.2d 137, 139 (Fla. 5th Dist. Ct. App. 2006); *Kreizinger v. Schlesinger*, 925 So.2d 431, 433 (Fla. 4th Dist. Ct. App. 2006).

Plaintiffs have not sufficiently identified the business relationship with which BRIS allegedly interfered. Plaintiffs described the subject relationship as one between plaintiffs and their online customers. Pls.' Am. Compl. ¶ 41. But although the relationship need not be an enforceable contract, it must at least be "evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Jay v. Mobley*, 783 So.2d 297, 299 (Fla. 4th Dist. Ct. App. 2001). Rather than identify the particular business relationships interfered with by BRIS, plaintiffs have simply referred generically to its customers. This is insufficient to show the existence of a business relationship. In Florida, "no cause of action exists for tortious interference with a business's relationship to the community at large." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla. 1994). Therefore, the court will dsimiss the tortious interference claim against BRIS.

    d.  Conversion

BRIS argues that plaintiffs have failed to state a viable claim for conversion. In Florida,

"[c]onversion occurs when a person asserts a right of dominion over chattel which is inconsistent with the right of the owner and deprives the owner of the right of possession." *Estate of Villanueva ex rel. Villanueva v. Youngblood*, 927 So.2d 955, 959 (Fla. 2d Dist. Ct. App. 2006) (quoting *Ming v. Interamerican Car Rental, Inc.*, 913 So.2d 650, 654 (Fla. 5th Dist. Ct. App. 2005)). The court notes again that Florida has excluded electronic data from its definition of "chattel." Moreover, plaintiffs have not alleged that BRIS deprived them of their right to possession of the objects allegedly converted. Where a defendant does not take possession of the chattel, conversion is legally impossible. *Medinis v. Swan*, 955 So.2d 595, 597 (Fla. 2d Dist. Ct. App. 2007). Therefore, the court will dismiss the conversion claim against BRIS.

    3.    *Jockey Club and Equibase*

In their own motion, Jockey Club and Equibase move to dismiss the claims against them on the same grounds relied upon by BRIS.[2] Because the relevant factual allegations and legal issues are identical, the court here incorporates by reference its discussion of BRIS' motion. The court will accordingly deny Jockey Club and Equibase's motion to dismiss the Computer Fraud and Abuse Act claim and grant the motion to dismiss the trespass to chattels, tortious interference, and conversion claims.

## CONCLUSION

Having considered the defendant's motion, it is hereby **ORDERED** and **ADJUDGED** that:

1.    Defendant HDW, Inc.'s motion to dismiss [DE # 32] is **GRANTED**. All claims against HDW, Inc. are **DISMISSED**.

---

[2] The court understands the amended complaint to assert all four claims asserted against BRIS against Jockey Club as well; and to assert only a trespass to chattels claim against Equibase.

10

Order Granting In Part and Denying in Part Defendants' Motions to Dismiss
Bain et al. v. The Jockey Club Technology Services, Inc. et al.
Case No. 07-80371-CIV-HURLEY/HOPKINS

    2.    Defendant Bloodstock Research Information Services, Inc.'s motion to dismiss, or in the alternative, for a more definite statement, [DE # 33] is **GRANTED IN PART**, as follows:

        a.    Plaintiffs' claims against Bloodstock Research Information Services, Inc. listed in Counts II, III, and IV are **DISMISSED WITH PREJUDICE**.

        b.    The motion to dismiss is **DENIED** as to Count I.

        c.    The motion for more definite statement is **DENIED**.

    3.    Defendants The Jockey Club Technology Services, Inc. and Equibase Company LLC's motion to dismiss [DE # 37] is **GRANTED IN PART**, as follows:

        a.    Plaintiffs' claims against The Jockey Club Technology Services, Inc. and Equibase Company LLC listed in Counts II, III, and IV are **DISMISSED WITH PREJUDICE**.

        b.    The motion to dismiss is **DENIED** as to Count I.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida, this _1st_ day of October, 2007.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*

For updated court information, visit unofficial Web site at http://us.geocities.com/uscts